**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Case No.: 24-41817-357 |
| H&M II, LLC | ) |
| | ) Honorable Brian C. Walsh |
| EIN - 99-3111449 | ) Chapter 11 Proceeding |
| Debtor. | ) |
| | ) DEBTOR'S PLAN OF |
| | ) REORGANIZATIONTION DATED |
| | ) AUGUST 19, 2024 |
| | ) |
| | ) Spencer P. Desai, Esq. |
| | ) Desai Law Firm LLC |
| | ) 13321 North Outer Forty Road, Suite 300 |
| | ) St. Louis, Missouri 63017 |
| | ) (314) 666-9781 |
| | ) spd@desailawfirmllc.com |

**PLAN OF REORGANIZATION FILED BY DEBTOR H&M II LLC DATED**
**AUGUST 19, 2024**

 H&M II, LLC ("Debtor") hereby files its Plan of Reorganization Dated August 19, 2024 for the Debtor's Chapter 11 bankruptcy estate pursuant to 11 U.S.C. §1189.

**INTRODUCTION**

 This is the Plan of Reorganization in the Chapter 11 Case of Debtor H&M II, LLC. (the "Plan").[1]

 Pursuant to the Plan, the Debtor proposes to pay its Creditors, after confirmation and the Effective Date of the Plan, from future income received by Debtor for three (3) years following the Effective Date of the Plan unless otherwise provided herein.

 Debtor submits this Plan to all of its Creditors in order to comply with provisions of the Bankruptcy Code requiring information substantially similar to a disclosure statement and

---

[1] All capitalized terms in the Plan shall, unless otherwise defined herein, have the meanings ascribed to them in Article __ of the Plan and the Code.

submission of information necessary for Creditors to arrive at an informed decision in exercising their right to vote for acceptance or rejection of the Plan.

This Plan provides detailed information regarding the terms for payment of Claims and other information designed to assist Creditors and equity security holders in determining whether to vote to accept the Plan. The information in this Plan was provided by Debtor and has not been audited, compiled, or otherwise reviewed by any third party. To that end, Debtor specifically disclaims any liability for unintentional errors and inadvertent inaccuracies contained in this Plan.

This Plan provides for one class of Secured Claims; one Class of Unsecured Claims; and one Class of Allowed Interests.  This Plan also provides for the payment of Administrative Expense Claims and any Priority Tax Claims.

All Creditors should refer to Article IV of this Plan for information regarding the precise treatment of their Claims.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE TO DETERMINE AND EVALUATE YOUR RIGHTS UNDER THIS PLAN.**

A.      **Purpose of this Document.** The Plan describes: (i) historical information regarding Debtor and the events leading to the Case and significant events during the Case; (ii) how the Plan proposes to treat Claims of Creditors, i.e. what you will receive on your Claim if the Plan is confirmed and how issues on the allowance of Claims will be addressed; (iii) how Debtor will put the Plan into effect, why Debtor believes that the Plan is feasible, and how the treatment of your Claim under the Plan compares to what you would receive in a bankruptcy liquidation; (iv) who can vote on or object to the Plan; (v) what factors the Bankruptcy Court will consider when deciding whether to confirm the Plan; and (vi) the effect of confirmation of the Plan.

**B.** **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.** The Court has not approved the adequacy of the information in the Plan. Circulation of the Plan to you should not be deemed tantamount to the Court's approval of the Plan. This section describes the procedures under which the Plan will or will not be confirmed.

1. **Time and Place of the Hearing to Confirm the Plan/Approve Adequacy of Information in the Plan.** The Court will conduct the hearing on confirmation of the Plan and final approval of the adequacy of the information in the Plan on **October 9, 2024 at 1:30 p.m.** in the United States Bankruptcy Court for the Eastern District of Missouri, Courtroom 5 North, 111 S 10th St, St. Louis, MO 63102.

2. **Deadline for Voting to Accept or Reject the Plan.** If you are entitled to vote to accept or reject the Plan, vote on the enclosed Ballot and return the Ballot in the enclosed envelope via U.S. Mail, overnight delivery or hand delivery to Spencer P. Desai, Desai Law Firm, LLC, 11321 N. Outer Forty Road, Suite 300, St. Louis, Missouri 63017. Your Ballot must be <u>received</u> by **September 30, 2024,** or it will not be counted. See Article VII below for a discussion of voting eligibility requirements,

3. **Deadline for Objecting to the Adequacy of the Information in the Plan and Confirmation of the Plan.** Objections to the adequacy of the information in the Plan and/or to confirmation of the Plan must be filed with the Court via the Court's electronic filing system at https://ecf.moeb.uscourts.gov or by mail addressed to United States Bankruptcy Court for the Eastern District of Missouri, 111 South 10th Street, 4th Floor, St. Louis, MO 63102and served upon Spencer P. Desai, Desai Law Firm, LLC, 11321 N. Outer Forty Road, Suite 300, St. Louis, Missouri 63017 on or before **September 30, 2024.**

4. **Election under 11 U.S.C. §1111(b).** Any election by a class of secured creditors to apply Section 1111(b)(2) of the Bankruptcy Code to its claims must be filed with the Court and served on the Debtor's counsel on or prior to **September 30, 2024.**

5. **Identity of Person to Contact for More Information.** If you want additional information about the Plan, you should contact Spencer P. Desai, Desai Law Firm, LLC, 11321 N. Outer Forty Road, Suite 300, St. Louis, Missouri 63017, (314) 666-9781, spd@desailawfirmllc.com.  Keep in mind, Mr. Desai cannot give you legal advice or assist you in determining how to vote on the Plan.

## HISTORICAL BACKGROUND OF DEBTOR AND POST-PETITION ACTIVITY

### *Background*

The Debtor is a wholly owned subsidiary of Hudson & McKee Real Estate, LLC which recently confirmed its Plan of Reorganization in case number 23-43539-357 pending before this Court.  The Debtor owns 103 parcels of residential rental real estate in the City of St. Louis ("Real Estate").   The Real Estate is not currently generating any income but one unit is nearing occupancy.   The Debtor does not operate or manage the Real Estate, those functions are handled by McKee Investments LLC which is owned by the Debtor's principal, Raymond McKee.

The Debtor acquired the Real Estate as part of a larger acquisition of a redevelopment portfolio.  The Debtor's redevelopment efforts were severely hampered by the COVID-19 pandemic.

### *Purpose of Filing and Post Petition Actions*

The City scheduled a tax sale for many of the Debtor's properties on May 21, 2024.  Debtor filed this proceeding as a direct result of the pending real estate sale.

The Debtor has a claim against the City for the unlawful teardown of 2937 Thomas ("Thomas Claim").  In August 2023, a contractor, operating under the direction of the City of St. Louis, entered the building and removed new kitchen cabinets, HVAC units, water heaters and electrical panels.  The building renovation was close to complete.  Despite several assurances that the initial damage was unauthorized and the Debtor would be reimbursed, the City contractor returned in October demolished over one-half of the building making it uninhabitable. The Debtor was operating with the understanding that the City was holding any tax sales until the Thomas Claim dispute was resolved.  Since the filing, the Debtor has determined that it will require counsel to pursue the Thomas Claim against the City of St. Louis.

4

# ARTICLE I
## Definitions

Capitalized items used in this plan shall, unless otherwise defined herein, have the meanings or rules of construction as are assigned to each under the Bankruptcy Code. In construing the defined term or terms used in the Plan, the (i) singular shall include the plural and the plural shall include the singular, (ii) conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive, and (iii) reference to any gender shall include any other gender as appropriate. Unless the context otherwise requires, the following terms used herein shall have the meaning specified hereinafter:

1.01    "Allowed Administrative Expense Claim" means an Allowed Claim arising from costs or expenses of administration of the Debtor's Estate incurred after the Petition Date allowed under § 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's estate and all compensation or reimbursement of expenses to the extent approved by the Bankruptcy Court under § 330 of the Bankruptcy Code.

1.02    "Allowed Claim" means any Claim in the amount and the priority classification set forth in the proof of such Claim that has been filed timely in this case, unless: (i) such Claim has been listed in such Schedule as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only in such amount and in such classification as is authorized by Final Order of the Bankruptcy Court; (ii) such Claim has been objected to or is objected to after entry of the Confirmation Order, in which case such claim shall be allowed only in such amount and such classification as is authorized by Final Order of the Bankruptcy Court; or (iii) such Claim has been paid in full, withdrawn or otherwise deemed satisfied in full.  An Allowed Claim shall not include unmatured interest accruing after the Petition Date or penalties unless otherwise stated in the Plan.

1.03    "Allowed Interest" means an interest in the Debtor in the nature of an equity interest of any sort, including a membership interest.

1.04    "Allowed Secured Claim" means an Allowed Claim secured by a valid, enforceable and properly perfected Lien in Estate Property, in an amount which is not in excess of the value of the Estate Property subject to such Claim and only to the extent of the value of the Lien of the holder of such Allowed Claim in such Estate Property, determined in accordance with §506 of the Bankruptcy Code.

1.05    "<u>Allowed Unsecured Claim</u>" means an Allowed Claim (a) which is not entitled to priority under § 507(a) of the Bankruptcy Code, or (b) as to which the claimant does not have a validly perfected enforceable Lien as defined in §§ 101(43), (44) and (45) of the Bankruptcy Code, (c) arising from the deficiency between the sale price of the property subject to a Lien and the amount of the Allowed Claim secured by the Lien or (d) which is listed as an undisputed Unsecured Claim in the Debtor's bankruptcy schedules.

1.06    "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, 11 U.S.C. §101, et. seq., as amended.

1.07    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division.

1.08    "<u>Bankruptcy Rules</u>" means the Rules of Bankruptcy Procedure adopted by the Supreme Court of the United States, as amended from time to time.

1.09    "<u>Case</u>" means the Chapter 11 Case entitled: *H&M, LLC* presently pending before the Bankruptcy Court as Case No 24-41817-357.

1.10    "<u>Chapter 5 Claims</u>" means all causes of action available to the Estate under Chapter 5 of the Bankruptcy Code.

1.11    "<u>Chapter 11</u>" means Chapter 11 of the Bankruptcy Code.

1.12    "<u>Claim</u>" means any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor on or as of the Petition Date, whether or not such right is reduced to judgment, liquidated, fixed, non-contingent, undisputed, legal equitable, secured or unsecured.

1.13    "<u>Class</u>" means a category of holders of Claims as defined in §1122 of the Bankruptcy Code.

1.14    "<u>Confirmation Date</u>" means the date on which the Confirmation Order is entered by the Clerk of the Bankruptcy Court in the docket for the Case.

1.15    "<u>Confirmation Order</u>" means the Final Order entered by the Bankruptcy Court confirming the Plan pursuant to §1129 of the Bankruptcy Code.

1.16    "<u>Creditor</u>" means any Person that holds an Allowed Claim.

1.17    "<u>Debtor</u>" means H&M II, LLC.

1.18    "Disputed Claim" means any filed Claim with respect to which an objection has been interposed in accordance with the Bankruptcy Code, the Bankruptcy Rules, this Plan or an order of the Bankruptcy Court.

1.19    "Distribution" means the cash and other consideration distributed by the Debtor of Subchapter V Trustee.

1.20    "Effective Date" means the first business day after the date upon which the Confirmation Order becomes a Final Order.

1.21    "Estate" means the estate created upon the commencement of this Case pursuant to §541(a) of the Bankruptcy Code.

1.22    "Estate Property" means all of the Debtor's property included in this Case, including all property in which the Debtor has an interest, as defined in §541(a) of the Bankruptcy Code.

1.23    "Excess Monthly Income" means the Debtor's total monthly income earned from and after the Effective Date through the end of the term of this Plan, less a reserve for business expenses and required withholdings, payments for taxes and expenses, including payments on Claims assessed against the Estate for Secured Claims, Administrative Expense Claims, Priority Tax Claims, and other Claims entitled to priority under Code § 507(a).

1.24    "Final Order" means an order or judgment of the Bankruptcy Court, as entered by the Clerk of the Bankruptcy Court on a docket and/or related to the Case in which: (i) the time for appeal or petition for review has expired, and no appeal or petition for review is pending or was timely filed; or (ii) any appeal or petition for review that has been finally determined or dismissed.

1.25    "Insider" means any Person who is an "insider" of the Debtor under §101(31) of the Bankruptcy Code.

1.26    "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.27    "Person" means an individual, corporation, limited liability company, partnership, joint venture, trust, estate and/or an incorporated association.

1.28    "Petition Date" means May 20, 2024, the date on which this Case commenced.

1.29    "Plan" means this Plan of Reorganization in its present form and as it may be amended or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the provisions contained herein.

1.30    "Pro Rata" means the same proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Interests in such Class. To the extent Disputed Claims or Disputed Interests exist in such Class, Pro Rata share shall mean the same proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of all Allowed Claims and Disputed Claims and Allowed Interests and Disputed Interests in such Class, until such Disputed Claims or Interests shall, in whole or in part, have become Allowed Claims or Interests, as the case may be.

1.31    "Professional Fee Application Bar Date" shall mean the first Business Day following the thirtieth day following the Effective Date.

1.32    "Real Estate" means the real estate located on the attached Exhibit A.

1.33    "Reorganized Debtor" means Debtor as it will exist on and after the Effective Date of the Plan.

1.34    "Secured Creditor" means a Creditor who held, as of the Petition Date, an Allowed Secured Claim.

1.35    "Secured Real Estate Tax Claim" shall mean a Claim for real estate taxes by the City of St. Louis secured by real estate owned by the Estate.


**ARTICLE II**
Unclassified Allowed Claims and Their Treatment

In accordance with §§1123(a)(1) and 1129(a)(12) of the Bankruptcy Code, Allowed Claims of the kind described in §§507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code are unclassified under the Plan and are treated in the manner set forth below.

2.01    Allowed Administrative Claims and Expenses. As required by the Bankruptcy Code, Allowed Administrative Claims are not classified under the Plan.  The holder of an Allowed Claim of the kind described in §507(a)(2) of the Bankruptcy Code, including, but not limited to, an Allowed Claim entitled to payment under § 503(b), shall receive on the Effective Date cash equal to the amount of such Allowed Claim.  The Administrative Claims outstanding on the Effective Date may consist of fees and expenses of attorneys, accountants, expenses incurred after the Petition Date, and post-petition taxes.  Professionals will file an application for compensation with the Bankruptcy Court, pursuant to §§330 and 331 of the Bankruptcy Code by the Professional Fee Application Bar Date.

The estimated unpaid Administrative Claims which will be paid pursuant to the Plan consist of the following:

| Claimant | Amount |
| --- | --- |
| Desai Law Firm LLC, Counsel for Debtor | $12,000.00 (estimated) |
| Seth Albin, Subchapter V Trustee | $5,000.00 (estimated) |

Administrative Expense Claims will be paid in full upon the Effective Date to the extent such Claims are Allowed Administrative Expense Claims on that date, except with respect to Claimants who elect to receive different treatment and/or Claimants whose Administrative Expense Claims were incurred by Debtor in the ordinary course of business. An Administrative Expense Creditor agreeing not to be paid on the Effective Date will be paid on a schedule agreeable to such Creditor and Debtor, after such Administrative Expense Claim is Allowed. Such Claims will be paid by Debtor in the ordinary course of business consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to such transactions,

Administrative Expense Claims that are not Allowed Administrative Expense Claims as of the Effective Date will be paid on or before thirty days after they are Allowed, unless deferred payment arrangements have been made or such Claim is a liability incurred in the ordinary course of business. In the event that an Administrative Expense Claim is a Disputed Claim on the Effective Date, sufficient funds shall be reserved by Debtor to pay such Administrative Expense Claim in full upon its allowance, unless deferred payment arrangements have been made.

2.02    Allowed Priority Tax Claims.  As required by the Bankruptcy Code, Allowed Priority Tax Claims are not classified under the Plan.  The Debtor has received one estimated Priority Tax Claim from the IRS.  The Debtor believes its tax liability is zero but will pay the IRS estimated claim on the Effective Date.

If any other Priority Tax Claims are filed and allowed, except to the extent that the holder of an Allowed Unsecured Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive deferred quarterly Cash payments following the Effective Date over a period no longer than five years after the Petition Date, beginning on the later of the first day of the first calendar quarter following the Effective Date or thirty days after

the Unsecured Priority Tax Claim is Allowed and continuing thereafter on the first day of each calendar quarter until the Allowed Unsecured Priority Tax Claim is paid in full with interest at the statutory rate.

## ARTICLE III
### Classification of Allowed Claims and Interests

3.01    Inclusion in Classes.  All Allowed Claims and Interests, other than Allowed Claims and Interests treated under Article II of the Plan, are placed in the Classes identified below.  All impaired classes are impaired classes as defined by 11 U.S.C. § 1124.

| Class | Description | Impaired or Unimpaired | Voting or Non-Voting |
|-------|-------------|------------------------|----------------------|
| 1 | Secured Claim of the City of St. Louis Collector of Revenue | Impaired | Voting |
| 2 | Allowed Unsecured Claims | Impaired | Voting |
| 3 | Allowed Interests | Unimpaired | Deemed to have Accepted |

## ARTICLE IV
### Treatment of Classified Claims and Interests

Under this Plan, treatment of Classified Allowed Claims and Allowed Interests under the Plan will be paid as follows:

4.01    Class 1 Allowed Secured Claim of the City of St. Louis Collector of Revenue:  The Class 1 Allowed Secured Claim of the City of St. Louis Collector of Revenue is for the 2020 – 2023 real estate taxes due on the Real Estate.

The St. Louis City Collector of Revenue shall retain its lien on the Real Estate with the same priority and validity that the Lien had on the Petition Date.  The Class 1 Claim shall be paid, if full,  in three (3) equal annual installments beginning on December 31, 2024.

4.02    Class 2 Allowed Unsecured Claims:  Class 2 shall consist of all Allowed Unsecured Claims held by any Unsecured Creditor against the Debtor.

Unsecured Claims are not secured by Estate Property and are not entitled to priority under Code § 507(a).  As further outlined in the procedure set forth in Article V below, the holders of Allowed General Unsecured Claims will receive payment in full of their claim on the Effective Date.

4.03    Class 3 Allowed Membership Interests:  Class 3 consists of all Allowed Interests in the Debtor.  Class 3 Allowed Interests will be retained on the Effective Date and therefore are unimpaired under the Plan and are deemed to have accepted the Plan.

4.04    Treatment of Disputed Claims:  Notwithstanding any other provisions of the Plan, payments and distributions with respect to any Claims which are disputed, unliquidated, or contingent, will not be made until such Claims are allowed.  Notwithstanding any provision in the Plan to the contrary, the Claim of any transferee for a transfer that is voidable under §§ 544, 547, 548 and 550 of the Bankruptcy Code will be deemed to be a Disputed Claim, and no distribution will be payable thereon, unless and until such transferee has paid the amount, or turned over any such property, for which such transferee is liable under §550 of the Bankruptcy Code.

**ARTICLE V**
Means for Execution of the Plan

5.01    Means of Implementing the Plan.    The Debtor will sell certain parcels of Real Estate after the Effective Date.  The proceeds from sale of any Real Estate will be used to pay the Class 1Claimant in addition to the annual Class 1 payment.  The Debtor will also prosecute the Thomas Claim and all net proceeds from the claim will be used to pay the Class 1 Claim.

5.02    Post-Confirmation Business Operations. Debtor will continue to operate its business as the Reorganized Debtor.

5.03    Risk Factors.  There are limited risk factors under the Plan.  The value of the Real Estate exceeds the amount of the Class 1 Claim so the only risk is the time a liquidation of the Debtor's Real Estate would take.

5.04    Feasibility.  Based upon the substantial equity cushion in the value of the Debtor's Real Estate and the Debtor's liabilities, the Debtor's Plan is feasible.

5.08    Tax Consequences of Plan.    The Debtor is not aware of any adverse tax consequences that will result from confirmation of the Plan.  Creditors concerned with how the Plan may affect their tax liability should consult with their accountants, attorneys, or advisors.


## ARTICLE VI
## Executory Contracts and Unexpired Leases

6.01    Executory Contracts and Unexpired Leases.    Upon Confirmation of the Plan, the Debtor shall be deemed to have assumed all existing pre-petition executory contracts and unexpired leases that were not previously rejected.


## ARTICLE VII
## Confirmation Requirements and Procedures

7.01    Overview of Requirements.    To be confirmable, the Plan must meet the requirements listed in Code §§ 1191(a) or (b). These include the requirements that (1) the Plan must be proposed in good faith; (2) the Plan must distribute to each Creditor at least as much as the Creditor would receive in a Chapter 7 liquidation case, unless the Creditor votes to accept the Plan; and (3) the Plan must be feasible. These requirements are not the only requirements listed in Code §§ 1129 and 1191 and they are not the only requirements for confirmation.

7.02    Who May Vote or Object.  Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A Creditor has a right to vote for or against the Plan only if that Creditor has a Claim that is both (1) Allowed or Allowed for voting purposes and (2) included in an Impaired Class that will retain value under the Plan.

7.03    What Is an Allowed Claim?  Only a Creditor with an Allowed Claim has the right to vote on the Plan. Generally, a Claim is Allowed if either (1) Debtor have scheduled the Claim on the Schedules, unless the Claim has been scheduled as a disputed, contingent, or unliquidated, or (2) the Creditor has filed a Proof of Claim, unless an objection has been filed to such Proof of Claim. When a Claim is not Allowed, the Creditor holding the Claim cannot vote unless the Court overrules the objection or allows the Claim for voting purposes under Bankruptcy Rule 3018(a).

7.04    <u>What Does Impaired Mean</u>**?**  As noted above, the holder of an Allowed Claim has the right to vote only if it is in a Class that is Impaired under the Plan. "Impaired" means the Plan alters the legal, equitable, or contractual rights of the members of that Class.

7.05    <u>Who is Not Entitled to Vote</u>. The following types of Creditors are not entitled to vote:

Holders of Claims that have been disallowed by an order of the Court;

a)    Holders of other Claims that are not "Allowed Claims," unless they have been "Allowed" for voting purposes;

b)    Holders of Claims in Classes that are not Impaired;

c)    Holders of Unsecured Claims entitled to priority pursuant to Code §§ 507(a)(2), (a)(3), and (a)(8);

d)    Holders of Claims in Classes that do not receive or retain any value under the Plan;

e)    Holders of Administrative Expense Claims.

<u>Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan</u>.

7.06    <u>Who Can Vote in More Than One Class</u>. A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim, or who otherwise hold Claims in multiple Classes, is entitled to accept or reject a Plan in each capacity and should cast one Ballot for each Claim.

7.07    <u>Liquidation Analysis</u>**.** To confirm the Plan, the Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such Claim and equity interest holders would receive in a Chapter 7 liquidation.   Since the Debtor's Plan proposes payment in full to all creditors, a liquidation analysis is not required.

7.08    <u>Ability to Fund Plan and Operate without Further Reorganization</u>. The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor or any successor to Debtor, unless such liquidation or reorganization is proposed in the Plan. Debtor believes that it has enough equity in its Real Estate and from recovery upon the Thomas Claim to pay all the Debtor's Claims

7.09    <u>Administrative Expense</u>. With the possible exception of the legal fees of Desai Law Firm, LLC, who will agree that Debtor can pay its Claim over time,  Debtor will have enough Cash on hand to pay costs of administration as provided for in the Plan.  Once Allowed, Debtor will pay Desai Law Firm, LLC the balance of its fees on or after the Effective Date on such terms as are acceptable to Desai Law Firm, LLC.

## ARTICLE VIII
<u>Discharge and Effects of Confirmation</u>

8.01    **DISCHARGE.**    **UPON THE EFFECTIVE DATE OF THE PLAN, OR COMPLETION OF PLAN PAYMETS, WHICHEVER MAY BE APPLICABLE, DEBTOR, THE REORGANIZED DEBTOR, AND ITS ESTATE, AND ALL OF THEIR PROPERTY, WILL RECEIVE A DISCHARGE OF AND RELEASE FROM ALL ANY AND ALL CLAIMS, LIENS, DEBTS, SECURITY INTERESTS, ENCUMBRANCES, AND INTERESTS THAT AROSE BEFORE THE CONFIRMATION DATE, INCLUDING, BUT NOT LIMITED TO, ALL PRINCIPAL AND ANY INTEREST ACCRUED THEREON, WHETHER OR NOT THE CREDITOR FILES A PROOF OF CLAIM, ACCEPTS THIS PLAN, OR HAS ITS CLAIM ALLOWED, EXCEPT AS PROVIDED IN CODE § 1141. UNDER CERTAIN CONDITIONS, DEBTOR MAY BE GRANTED A DISCHARGE EVEN IF ALL PLAN PAYMENTS TO BE MADE UNDER THE PLAN DURING THE PLAN PERIOD ARE NOT COMPLETED. SUBJECT TO THE PROVISIONS OF THIS ARTICLE, THE PAYMENTS AND DISTRIBUTIONS MADE UNDER THIS PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE OF ALL CLAIMS AGAINST DEBTOR AND THE REORGANIZED DEBTOR, AND ANY OF THEIR RESPECTIVE ASSETS OR PROPERTY, INCLUDING ANY CLAIM FOR INTEREST ACCRUING AFTER THE PETITION DATE AND PRIOR TO THE EFFECTIVE DATE. ON AND AFTER THE EFFECTIVE DATE, EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN, ALL HOLDERS OF CLAIMS ARISING PRIOR TO THE CONFIRMATION DATE SHALL, TO THE FULLEST EXTENT POSSIBLE UNDER APPLICABLE LAW, BE PERMANENTLY BARRED AND ENJOINED FROM ASSERTING AGAINST THE REORGANIZED DEBTOR OR THEIR ASSETS OR PROPERTY ANY OTHER OR FURTHER CLAIMS, INCLUDING CLAIMS BASED ON ANY ACT OR OMISSION, TRANSACTIONS OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE CONFIRMATION DATE.**

14

8.02    <u>Operation of Confirmation Order</u>. Pursuant to Code § 1142(b), the Confirmation Order shall operate as an order of the Court directing Debtor, the Reorganized Debtor, and any other necessary parties, to execute and deliver, or join in the execution and delivery of any instrument required to effect a transfer of the Estate Property, and to perform any other act that is necessary for the consummation of this Plan.

8.03    <u>Vesting of Property</u>**.** On the Effective Date, all Estate Property will vest in the Reorganized Debtor pursuant to Code § 1141(b), free and clear of all Claims and interests except as provided in the Plan.  Should this Chapter 11 Case convert to a case under Chapter 7 following confirmation, but before substantial consummation of the Plan, all property of the Chapter 11 estate shall revest in the Chapter 7 estate.

8.04    <u>Binding Effect of Plan / Plan Creates New Obligations</u>**.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. The payments provided for in this Plan constitute new contractual obligations that replace those obligations to Creditors that existed prior to the Confirmation Date. On and after the Confirmation Date, the provisions of this Plan shall bind Debtor, the Reorganized Debtor, and all Creditors (whether they have accepted this Plan or not) and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

8.05    <u>Modification of Plan</u>.  Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require new or additional disclosures to Creditors and/or revoting on the Plan. Upon request of Debtor, the United States Trustee, or the holder of any Allowed Unsecured Claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on Claims of a particular class; (2) extend or reduce the time period for such payments; or (3) alter the amount of Distribution to a Creditor whose Claim is provided for by the Plan to the extent necessary to take account of any payment of the Claim made other than under the Plan.

8.06    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction of this Case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until the entry of a final decree closing the Estate, and with respect to the following matters:

a)    To preserve and enable Debtor to consummate any and all proceedings brought or to commence any action to set aside liens or encumbrances and to recover any transfers, assets or damages to which Debtor may be entitled to under applicable provisions of the Bankruptcy Code, including without limitation, Code §§ 544, 545, 547, 548, 549, and 553(b), or other federal, state or local laws;

b)    To adjudicate, hear and determine all controversies concerning the amount, Classification and priority of all Claims against or interest in Debtor and to re-examine any Claims or interests which may have been Allowed including, without limitation, to hear and determine all Claims arising from the rejection of any executory contracts or unexpired leases. The failure by Debtor or any party in interest initially to object or to examine any Claims or interests shall not be deemed to be a waiver of their rights to object to, or cause to be reexamined, any such Claim, in whole or in part;

c)    To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

d)    To adjudicate all Claims to a security or ownership interest in any Estate Property or property of Debtor or in any proceeds thereof, and to resolve any and all disputes involving any Claims;

e)    To conduct hearings on valuation, as necessary, and to determine whether any party-in-interest is entitled to recover against any Person any Claim, whether arising under Chapter 5 of the Bankruptcy Code, state law, out of a voidable preference, out of a fraudulent transfer or otherwise, whether such voidable transfer occurred prior to or after the Petition Date;

f)    To adjudicate all Claims or controversies arising out of any purchase, sale or contract made or undertaken by Debtor during the pendency of this Case;

g)    To hear and determine any and all pending adversary proceedings or contested matters;

h)    To enforce any judgment entered or settlement approved by the Bankruptcy Court;

6.    To recover all assets and properties of Debtor wherever located;

i)    To hear and determine all applications for compensation of professionals and other Administrative Expenses;

j)    To adjudicate all Claims of Debtor against third parties, to the extent the Court has authority to maintain jurisdiction over said Claims;

k)      To determine all matters, controversies, and disputes arising under or in connection with this Plan, the application or disposition of Estate Property, and/or to determine any modification of the Plan after Confirmation;

l)      To determine such other matters as may be provided for in this Plan and the order of Confirmation and for the purposes set forth in Code § 1127(b);

m)     To make such orders as are necessary or appropriate to establish and enforce the rights and powers of the Reorganized Debtor under the confirmed Plan or to carry out the provisions of this Plan, including, but not limited to orders interpreting, clarifying or enforcing the provisions thereof; and

n)      To enter a final decree pursuant to Rule 3022 of the Bankruptcy Rules.

8.07    <u>Final Decree</u>.  Once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, Debtor shall file a motion with the Court to obtain a final decree to close the Case. Alternatively, the Court may enter such a final decree on its own motion.

Dated: August 19, 2024                      Respectfully submitted,

THE DESAI LAW FIRM, LLC

By:   */s/ Spencer P. Desai*
     Spencer P. Desai, #39877
     13321 North Outer Forty Road, Suite 300
     St. Louis, MO 63017
     Telephone: (314) 666-9781
     Facsimile: (314) 448-4320
     spd@desailawfirmllc.com

COUNSEL FOR DEBTOR

# **EXHIBIT A**

| REAL ESTATE TRANSFERRED TO H&M II, LLC | | | | | | |
|---|---|---|---|---|---|---|
| Address & Type Of Property | Title Formerly In Name Of | | Active / Vacant | Market Value | Mortgage Holder | Mortage Balanc |
| 1721 Bacon | Hudson & McKee Real Estate | Lot | Vacant | $    30,000 | N/A | $    - |
| 1817 Bacon | Hudson & McKee Real Estate | Building | Vacant | $    45,750 | N/A | $    - |
| 1920 Bacon | Hudson & McKee Real Estate | Lot | Vacant | $    30,000 | N/A | $    - |
| 1923 Bacon | Hudson & McKee Real Estate | Lot | Vacant | $    30,000 | N/A | $    - |
| 1924 Bacon | Hudson & McKee Real Estate | Lot | Vacant | $    30,000 | N/A | $    - |
| 2539 Bacon | Hudson & McKee Real Estate | Lot | Vacant | $    30,000 | N/A | $    - |
| 2709 Bacon | Hudson & McKee Real Estate | Building | Vacant | $    94,800 | N/A | $    - |
| 781 Bayard ave | Hudson & McKee Real Estate | Building | Vacant | $    78,000 | N/A | $    - |
| 2942 Cass | Hudson & McKee Real Estate | Building | Vacant | $    63,600 | N/A | $    - |
| 1829 Coleman | Hudson & McKee Real Estate | Building | Vacant | $    75,600 | N/A | $    - |
| 1900 Coleman | Hudson & McKee Real Estate | Building | Vacant | $    45,600 | N/A | $    - |
| 2521 Coleman | Hudson & McKee Real Estate | Lot | Vacant | $    30,000 | N/A | $    - |
| 3508 Cozens | Hudson & McKee Real Estate | Lot | Vacant | $    30,000 | N/A | $    - |
| 3732 Cozens | Hudson & McKee Real Estate | Building | Vacant | $    66,000 | N/A | $    - |
| 2702 Dayton | Hudson & McKee Real Estate | Building | Vacant | $    184,800 | N/A | $    - |
| 2705 Dayton | Hudson & McKee Real Estate | Building | Vacant | $    58,800 | N/A | $    - |
| 2709 Dayton | Hudson & McKee Real Estate | Building | Vacant | $    69,600 | N/A | $    - |
| 2713 Dayton | Hudson & McKee Real Estate | Building | Vacant | $    57,660 | N/A | $    - |
| 2801Dayton | Hudson & McKee Real Estate | Building | Vacant | $    71,700 | N/A | $    - |
| 2803 Dayton | Hudson & McKee Real Estate | Building | Vacant | $    76,500 | N/A | $    - |
| 2804 Dayton | Hudson & McKee Real Estate | Building | Vacant | $    75,300 | N/A | $    - |
| 2809 Dayton | Hudson & McKee Real Estate | Building | Vacant | $    168,000 | N/A | $    - |
| 2819 Dayton | Hudson & McKee Real Estate | Building | Vacant | $    73,500 | N/A | $    - |
| 2826 Dayton | Hudson & McKee Real Estate | Building | Vacant | $    105,300 | N/A | $    - |
| 2830 Dayton | Hudson & McKee Real Estate | Lot | Vacant | $    30,000 | N/A | $    - |
| 1718 Elliot | Hudson & McKee Real Estate | Building | Vacant | $    117,600 | N/A | $    - |
| 1807 Elliot | Hudson & McKee Real Estate | Building | Vacant | $    78,000 | N/A | $    - |
| 1816 Elliot | Hudson & McKee Real Estate | Building | Vacant | $    66,000 | N/A | $    - |
| 3100 Evans | Hudson & McKee Real Estate | Building | Active | $    195,000 | N/A | $    - |
| 3110 Evans | Hudson & McKee Real Estate | Building | Vacant | $    51,600 | N/A | $    - |
| 2816 Gamble | Hudson & McKee Real Estate | Lot | Vacant | $    30,000 | N/A | $    - |
| 2818 Gamble | Hudson & McKee Real Estate | Building | Vacant | $    63,450 | N/A | $    - |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2820 Gamble | Hudson & McKee Real Estate | Building | Vacant | $ | 58,500 | N/A | $ - |
| 2827 Gamble | Hudson & McKee Real Estate | Building | Vacant | $ | 122,400 | N/A | $ - |
| 2831 Gamble | Hudson & McKee Real Estate | Building | Active | $ | 378,000 | N/A | $ - |
| 2834 Gamble | Hudson & McKee Real Estate | Building | Active | $ | 216,000 | N/A | $ - |
| 1344 Garrison | Hudson & McKee Real Estate | Building | Vacant | $ | 108,800 | N/A | $ - |
| 1348 Garrison | Hudson & McKee Real Estate | Building | Vacant | $ | 108,800 | N/A | $ - |
| 1350 Glasgow | Hudson & McKee Real Estate | Building | Active | $ | 198,000 | N/A | $ - |
| 1622 Glasgow | Hudson & McKee Real Estate | Building | Vacant | $ | 180,000 | N/A | $ - |
| 2810 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 60,960 | N/A | $ - |
| 2816 JCPB | Hudson & McKee Real Estate | Building | Active | $ | 108,000 | N/A | $ - |
| 2901 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 66,000 | N/A | $ - |
| 2903 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 48,000 | N/A | $ - |
| 2905 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 66,000 | N/A | $ - |
| 2916 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 54,000 | N/A | $ - |
| 2918 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 54,000 | N/A | $ - |
| 2920 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 198,000 | N/A | $ - |
| 2932 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 54,000 | N/A | $ - |
| 2950 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 73,350 | N/A | $ - |
| 2952 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 54,000 | N/A | $ - |
| 2954 JCPB | Hudson & McKee Real Estate | Building | Vacant | $ | 66,000 | N/A | $ - |
| 3025 JCPB | Hudson & McKee Real Estate | Building | Active | $ | 238,800 | N/A | $ - |
| 3027 JCPB | Hudson & McKee Real Estate | Building | Active | $ | 346,000 | N/A | $ - |
| 1024 Leffingwell | Hudson & McKee Real Estate | Building | Vacant | $ | 351,000 | N/A | $ - |
| 1353l Leffingwell | Hudson & McKee Real Estate | Building | Vacant | $ | 92,400 | N/A | $ - |
| 2835 Madison | Hudson & McKee Real Estate | Building | Vacant | $ | 66,000 | N/A | $ - |
| 2728 Mills | Hudson & McKee Real Estate | Building | Vacant | $ | 45,000 | N/A | $ - |
| 1721 N Leffingwell | Hudson & McKee Real Estate | Building | Vacant | $ | 54,000 | N/A | $ - |
| 2803 Sheridan | Hudson & McKee Real Estate | Building | Vacant | $ | 54,300 | N/A | $ - |
| 2805 Sheridan | Hudson & McKee Real Estate | Building | Vacant | $ | 48,600 | N/A | $ - |
| 2811 Sheridan | Hudson & McKee Real Estate | Building | Vacant | $ | 73,800 | N/A | $ - |
| 2814 Sheridan | Hudson & McKee Real Estate | Building | Vacant | $ | 60,000 | N/A | $ - |
| 2815 Sheridan | Hudson & McKee Real Estate | Building | Vacant | $ | 39,600 | N/A | $ - |
| 2822 Sheridan | Hudson & McKee Real Estate | Lot | Vacant | $ | 30,000 | N/A | $ - |
| 2908 Sheridan | Hudson & McKee Real Estate | Lot | Vacant | $ | 30,000 | N/A | $ - |
| 2908 Sheridan | Hudson & McKee Real Estate | Lot | Vacant | $ | 30,000 | N/A | $ - |

| 2910 Sheridan | Hudson & McKee Real Estate | Building | Active | $ | 119,000 | N/A | $ | - |
|---|---|---|---|---|---|---|---|---|
| 2709 Stoddard | Hudson & McKee Real Estate | Building | Vacant | $ | 72,000 | N/A | $ | - |
| 2801 Stoddard | Hudson & McKee Real Estate | Building | Vacant | $ | 117,000 | N/A | $ | - |
| 2829 Stoddard | Hudson & McKee Real Estate | Lot | Vacant | $ | 30,000 | N/A | $ | - |
| 2831 Stoddard | Hudson & McKee Real Estate | Building | Vacant | $ | 66,000 | N/A | $ | - |
| 2610 Thomas | Hudson & McKee Real Estate | Building | Vacant | $ | 78,000 | N/A | $ | - |
| 2724 Thomas | Hudson & McKee Real Estate | Building | Vacant | $ | 60,000 | N/A | $ | - |
| 2800 Thomas | Hudson & McKee Real Estate | Building | Vacant | $ | 106,800 | N/A | $ | - |
| 2801 Thomas | Hudson & McKee Real Estate | Lot | Vacant | $ | 30,000 | N/A | $ | - |
| 2823 Thomas | Hudson & McKee Real Estate | Building | Vacant | $ | 78,000 | N/A | $ | - |
| 2824 Thomas | Hudson & McKee Real Estate | Building | Vacant | $ | 72,000 | N/A | $ | - |
| 2826 Thomas | Hudson & McKee Real Estate | Building | Vacant | $ | 58,500 | N/A | $ | - |
| 2828 Thomas | Hudson & McKee Real Estate | Lot | Vacant | $ | 30,000 | N/A | $ | - |
| 2913 Thomas | Hudson & McKee Real Estate | Lot | Vacant | $ | 30,000 | N/A | $ | - |
| 2937 Thomas | Hudson & McKee Real Estate | Building | Vacant | $ | 72,000 | N/A | $ | - |
| 3111 Thomas | Hudson & McKee Real Estate | Building | Vacant | $ | 58,800 | N/A | $ | - |
|  |  |  |  | $ | 7,162,570 |  | $ | - |